Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:      516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCI SCHALLMAN,<br><br>              Plaintiff,<br><br>      vs.<br><br>NATUS MEDICAL INCORPORATED.,<br>JOSHUA H. LEVINE, THOMAS J.<br>SULLIVAN, ILAN DASKAL, ERIC J.<br>GUERIN, LISA WIPPERMAN HEINE,<br>BRYANT M. MOORE, and ALICE D.<br>SCHROEDER<br><br>              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Nanci Schallman ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

### <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff brings this stockholder action against Natus Medical Incorporated ("Natus" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Prince Parent Inc. ("Parent"), an affiliate of ArchiMed Group ("Ultimate Parent"), through merger vehicle Prince Mergerco Inc. ("Merger

Sub" and collectively with Parent and Ultimate Parent, "ArchiMed") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a April 17, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Natus's common stock will be converted into the right to receive $33.50 in cash, without interest.

3.      Thereafter, on May 23, 2022, Natus filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on May 23, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

6.    As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Natus, provided by Natus management to the Board and the Board's financial advisor Stifel Nicolaus & Company, Incorporated ("Stifel") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Stifel, if any, and provide to the Company and the Board.

7.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.    Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Natus stockholder.

9.    Defendant Natus Medical Incorporated provides medical device solutions focuses on the diagnosis and treatment of patients with central nervous and sensory system disorders worldwide. Natus is incorporated in Delaware and has its principal place of business at 3150 Pleasant View Road, Middleton, WI 53562.  Shares of Natus common stock are traded on the NASDAQ Stock Exchange under the symbol "NTUS".

10.    Defendant Joshua H. Levine ("Levine") has been a Director of the Company at all relevant times

11.    Defendant Thomas J. Sullivan ("Sullivan") has been a director of the Company at all relevant times. In addition, Sullivan serves as the Company's Chief Executive Officer ("CEO") and President.

12.    Defendant Ilan Daskal ("Daskal") has been a director of the Company at all relevant times.

13.    Defendant Eric J. Guerin ("Guerin") has been a director of the Company at all relevant times.

14.     Defendant Lisa Wipperman Heine ("Heine") has been a director of the Company at all relevant times.

15.     Defendant Bryant M. Moore ("Moore") has been a director of the Company at all relevant times.

16.     Defendant Alice D. Schroeder ("Schroeder") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Ultimate Parent is a privately owned investment fund.

19.     Non-Party Parent is a subsidiary of Ultimate Parent created to effectuate the Proposed Transaction.

20.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.     Natus Medical Incorporated provides medical device solutions focuses on the diagnosis and treatment of patients with central nervous and sensory system disorders worldwide. It offers products and technologies used for the screening, detection, treatment, monitoring, and tracking of common medical ailments in newborn care, hearing impairment, neurological and neurosurgical treatments, epilepsy, sleep disorders, and neuromuscular diseases. The company also provides computerized neurodiagnostic systems for audiology, neurology, polysomnography, and neonatology; and software systems for managing and tracking disorders and diseases for public health laboratories. In addition, it offers electroencephalography, long term monitoring, intensive care unit monitoring, electromyography, sleep analysis or polysomnography, and intra-operative monitoring solutions. Further, the company provides hearing assessment, screening, and instrument fitting solutions; jaundice management products; brain injury products; and eye imaging systems and products used in the advanced science and practice of neonatal and pediatric retinal imaging. Additionally, it offers essential products used in the everyday operation of neonatal intensive care unit (NICU); balance assessment systems to evaluate patients with balance disorders; and NICVIEW, a live streaming video for families with babies in the NICU. The company also provides computer-based audiological, otoneurologic, and vestibular instrumentation for hearing and balance care professionals. It serves university medical centers, public and private hospitals, physician offices, clinics, research laboratories, and others. The company was formerly known as ALGOTEK Instruments, Inc. and changed its name to Natus Medical Incorporated in September 1988. Natus Medical Incorporated was incorporated in 1987 and is headquartered in Middleton, Wisconsin.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction,

indicated impressive financial success.  For example, in the February 24, 2022 press release announcing its 2021 Q4 financial results, the Company highlighted that Revenue increased 8% compared to Q4 2020 and that the company had $63.9 million in operating cash flow for the year 2021.

26.     Speaking on the positive results, CEO Defendant Sullivan said, "'I would like to thank our Natus Teammates for their efforts to deliver growth in both revenue and income in the fourth quarter despite challenges from both Covid and supply chain related constraints," ...... "Throughout the year we focused on ensuring our products were available to clinicians and despite incurring over $1.7 million in higher costs in the fourth quarter alone, our non-GAAP earnings per share increased more than 200%."

27.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Natus.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success. Despite this upward trajectory, the Individual Defendants have caused Natus to enter into the Proposed Transaction without providing requisite information to Natus stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, while the Preliminary Proxy Statement fails to indicate whether a committee of disinterested directors was created to run the sales process, and if so, the composition of that committee, what powers that committee had, including whether it had the power to veto a potential transaction if it were not in the best interest of shareholders.

30.     Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and ArchiMed and whether this agreement differed from any other agreement with potentially interested third parties discussed

and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

32.     On April 18, 2022, Natus and ArchiMed issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **MIDDLETON, Wis., April 18, 2022 (GLOBE NEWSWIRE)** -- Natus Medical Incorporated (NASDAQ: NTUS), (the "Company" or "Natus"), a leading provider of medical device solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems, announced today that it has entered into a definitive agreement to be acquired by an affiliate of ArchiMed ("ArchiMed"), a leading investment firm focused exclusively on the healthcare industry for approximately $1.2 billion. Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock, representing a 29% premium to the closing price of the Company's common stock on April 14, 2022.
>
> "The sale of Natus to ArchiMed will provide our shareholders with immediate and substantial cash value, as well as a compelling premium, and the Board has unanimously agreed that this transaction is in the best interests of our shareholders," said Joshua H. Levine, Chairman of Natus.
>
> "Our nearly 1,400 Natus Teammates remain committed to advance the standard of care and improve outcomes and quality of life for patients affected by disorders of the brain, neural pathways, and eight sensory nervous systems," said Thomas J. Sullivan, President & Chief Executive Officer of Natus Medical, Incorporated. "ArchiMed's mix of operational, medical, scientific and financial expertise will help us continue our mission to serve our customers while delivering immediate value to shareholders."
>
> Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock they own. The transaction has fully committed equity financing from funds affiliated with ArchiMed and fully committed debt financing, and there are no financing conditions associated with the transaction.

Natus's Board of Directors has unanimously approved the merger agreement with ArchiMed and recommends that Natus's shareholders adopt the merger agreement. In connection with the transaction, the Company will prepare a proxy statement to be filed with the U.S. Securities and Exchange Commission ("SEC"). Following any review by the SEC, a definitive proxy statement will be mailed to shareholders of Natus. Natus expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including approval by Natus shareholders and receipt of regulatory approvals. Upon completion of the transaction, Natus will become a private company and Natus shares will no longer be listed on any public market.

Under the terms of the merger agreement, Natus may solicit proposals from third parties for a period of 30 days continuing through May 17, 2022, and in certain cases for a period of 35 days continuing through May 22, 2022. In addition, Natus may, at any time prior to receipt of shareholder approval, subject to the provisions of the merger agreement, respond to unsolicited proposals that constitute or would reasonably be expected to lead to a superior proposal. Natus will have the right to terminate the merger agreement with ArchiMed to enter into a superior proposal subject to the terms and conditions of such agreement, including payment of a customary termination fee. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Natus does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

### *Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicate that Natus insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Natus.

34.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| NAMED EXECUTIVE OFFICERS, EXECUTIVE OFFICERS, DIRECTORS AND DIRECTOR NOMINEES: | OUTSTANDING SHARES BENEFICIALLY OWNED | SHARES UNDERLYING RSUS AND OPTIONS | TOTAL SHARES BENEFICIALLY OWNED | PERCENTAGE OF CLASS |
|---|---|---|---|---|
| MS. WIPPERMAN HEINE[2] | 21,212 | — | 21,212 | * |
| MR. GUERIN[1] | 5,799 | — | 5,799 | * |
| MR. LEVINE[2] | 32,312 | — | 32,312 | * |
| MR. MOORE[1] | 5,799 | — | 5,799 | * |
| MR. DASKAL[2] | 13,862 | — | 13,862 | * |
| MS. SCHROEDER[2] | 17,331 | — | 17,331 | * |
| MR. SULLIVAN[3] | 72,349 | — | 72,349 | * |
| MR. DAVIES[4] | 68,079 | — | 68,079 | * |
| MR. NOLL[5] | 138,543 | 18,134 | 156,677 | * |
| DR. CHUNG[6] | 48,318 | — | 48,318 | * |
| ALL DIRECTORS, DIRECTOR NOMINEES AND EXECUTIVE OFFICERS AS A GROUP (10 PERSONS) | **423,604** | **18,134** | **441,738** | **1.3%** |

35.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Number of Shares Subject to Unvested Company Options[1] | Aggregate Value of Unvested Company Options ($) | Number of Shares of Unvested Company Restricted Stock[2] | Aggregate Value of Unvested Company Restricted Stock ($)[2] | Number of Shares Subject to Company Restricted Stock Units[3] | Aggregate Value of Unvested Company Restricted Stock Units ($)[3] | Total Value ($) |
|---|---|---|---|---|---|---|---|
| Thomas J. Sullivan | — | $— | 57,298 | $1,919,483 | 648,555 | $21,726,593 | $23,646,076 |
| B. Drew Davies | — | — | 43,253 | 1,448,976 | 113,767 | 3,811,195 | 5,260,170 |
| Austin F. Noll, III | 54,400 | 697,408 | 61,738 | 2,068,223 | 61,966 | 2,075,861 | 4,841,492 |

| D. Christopher Chung, M.D. | 35,360 | 453,315 | 37,299 | 1,249,517 | 35,056 | 1,174,376 | 2,877,208 |
|---|---|---|---|---|---|---|---|
| Jonathan A. Kennedy[4] | — | — | — | — | — | — | — |
| Ilan Daskal | — | — | 5,214 | 174,669 | — | — | 174,669 |
| Lisa Wipperman Heine | — | — | 5,214 | 174,669 | — | — | 174,669 |
| Joshua H. Levine | — | — | 5,214 | 174,669 | — | — | 174,669 |
| Bryant M. Moore | — | — | 5,799 | 194,267 | — | — | 194,267 |
| Alice Schroeder | — | — | 5,214 | 174,669 | — | — | 174,669 |
| Eric J. Guerin | — | — | 5,799 | 194,267 | — | — | 194,267 |

36.     In addition, certain employment agreements with certain Natus executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

### Golden Parachute Compensation Table

|  | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total Payments ($)[4] |
|---|---|---|---|---|
| Thomas J. Sullivan | $10,128,567 | $17,471,407 | $75,000 | $27,674,974 |
| B. Drew Davies | 788,700 | 5,260,170 | 30,000 | 6,078,870 |
| Austin F. Noll, III | 758,200 | 4,841,492 | 15,000 | 5,614,692 |
| D. Christopher Chung, M.D.[5] | — | 2,877,208 | — | 2,877,208 |
| Jonathan A. Kennedy[6] | — | — | — | — |

37.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Natus, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

39.     On May 23, 2022, the Natus Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

> a.  Adequate information regarding whether a Special Committee of disinterested and independent Board members was created to run the sales process, and
>
> > i.  If such a Special Committee was created, information regarding said committee's composition, rights, authorities, and powers;
> >
> > ii.  If such a Special Committee was not created, the specific reasoning underlying this decision;
>
> b.  Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including ArchiMed, would fall away; and

d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Natus's Financial Projections*

41.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Natus provided by Natus management to the Board and Stifel and relied upon by Stifel in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Stifel reviewed, "non-publicly available information concerning Natus, including, without limitation, internal financial analyses, financial projections, reports, and other information prepared by its management."

43.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Natus management provided to the Board and Stifel. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

44.     With regard to the *Financial Projections* prepared by Natus, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

  a.  EBITDA (Non-GAAP) including all underlying necessary inputs and assumptions used to calculate this metric;

  b.  Unlevered Free Cash Flow (without proposed divested assets) including all underlying necessary inputs and assumptions used to calculate this metric; and

  c.  Unlevered Free Cash Flow (plus proposed divested assets), including all underlying necessary inputs and assumptions used to calculate this metric, including specifically, the underlying bases upon which the utilized assumption that "revenue is projected to grow 6% per year in 2023-2026 along with costs growing at half the rate of sales" is based; and

45.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.     This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Stifel's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
*Stifel*

48.     In the Preliminary Proxy Statement, Stifel describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With regard to the *Selected Public Companies Analysis* prepared by Stifel, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

      a.   The individual metrics for each company compared; and

      b.   The specific applied 2021A EBITDA, 2022 P EBITDA, and 2023P EBITDA multiple reference ranges applied to the corresponding Natus EBITDA values, and the specific inputs and assumptions used to create these ranges.

50.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The aggregate value of each individual transaction;

      b.   The specific date on which each transaction closed; and

      c.   The specific the selected multiple reference range of NTM EBITDA Multiples utilized as well as the underlying inputs and assumptions used to derive this range.

51.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumption used to determine a range of perpetuity growth rates of 2.0% to 4.0%;

      b.   The terminal value calculated for the Company;

      c.   The specific inputs and assumption used to determine a range of discount rates

of 10% to 12%;

    d.   The specific inputs utilized for the cost of each capital source as well as their relevant weights;

    e.   The Company's weighted average cost of capital; and

    f.   The range of implied enterprise values calculated for the Company.

52.     With respect to the *Premiums Paid Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The aggregate value of each individual transaction;

    b.   The specific date on which each transaction closed; and

    c.   The specific companies compared.

53.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Natus stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55.     Plaintiff repeats all previous allegations as if set forth in full herein.

56.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

62.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Natus's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.    The Individual Defendants acted as controlling persons of Natus within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Natus to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Natus and all of its employees.  As alleged above, Natus is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 27, 2022                    **BRODSKY & SMITH**

                                By:  _____
                                     Evan J. Smith
                                     240 Mineola Boulevard
                                     Mineola, NY  11501
                                     Phone:  (516) 741-4977
                                     Facsimile (561) 741-0626

                                     *Counsel for Plaintiff*